## PENNIMAN'S CASE.

A State statute abolishing imprisonment for debt does not, within the meaning of the Constitution, impair the obligation of contracts which were entered into before its enactment.

ERROR to the Supreme Court of the State of Rhode Island. The facts are stated in the opinion of the court.

*Mr. Benjamin F. Thurston* in support of the judgment below. *Mr. Harvey N. Shepard, contra.*

MR. JUSTICE WOODS delivered the opinion of the court.

The General Statutes of Rhode Island, chap. 142, contain the following provisions : —

"SECT. 11. Every manufacturing corporation included within the provisions of this chapter, shall file in the town clerk's office of the town where the manufactory is established, annually on or before the 15th day of February, a certificate, signed by a majority of the directors, truly stating the amount of its capital stock actually paid in; the value, as last assessed for a town tax, of its real estate; the balance of its personal assets, and the amount of its debts.

"SECT. 12. If any of said companies shall fail to do so, all the stockholders of said company shall be jointly and severally liable for all the debts of the company then existing, and for all that shall

be contracted before such notice shall be given, unless such company shall have been insolvent and assigned its property in trust for the benefit of its creditors, in which case the obligation to give notice by the filing of such certificate shall cease."

"SECT. 20. Whenever the stockholders of any manufacturing company shall be liable, by the provisions of this chapter, to pay the debts of such company, or any part thereof, their persons and property may be taken therefor on any writ of attachment or execution, issued against the company for such debt, in the same manner as on writs and executions issued against them for their individual debts.

"SECT. 21. The person to whom such officers or stockholders may render themselves liable as aforesaid may, instead of the proceedings aforementioned, have his remedy against said officers or stockholders by bill in equity in the Supreme Court."

While these provisions of the statute law were in force, Tweedle recovered judgment against the American Steam and Gas-pipe Company, a manufacturing corporation created by the General Assembly of Rhode Island, and subject to the provisions above recited. Penniman was a stockholder in that corporation. The certificate required by sect. 11 had not been filed. He was, consequently, individually liable in person and property for the satisfaction of the judgment. Therefore, the sheriff, holding the execution issued on the judgment, and finding no goods and chattels of the corporation or of Penniman, arrested him and committed him to jail.

While he was in jail, under the commitment, the General Assembly of Rhode Island, on March 27, 1877, passed an act "defining and limiting the mode of enforcing the liability of stockholders for the debts of corporations." It was as follows: —

"SECT. 1. No person shall hereafter be imprisoned, or be continued in prison, nor shall the property of any such person be attached, upon an execution issued upon a judgment obtained against a corporation of which such person is or was a stockholder.

"SECT. 2. All proceedings to enforce the liability of a stockholder for the debts of a corporation shall be either by suit in equity, conducted according to the practice and course of equity, or by an action of debt upon the judgment obtained against such

corporation; and in any such suit or action such stockholder may contest the validity of the claim upon which the judgment against such corporation was obtained upon any ground upon which such corporation could have contested the same in the action in which such judgment was recovered.

"SECT. 3. All acts and parts of acts inconsistent herewith are hereby repealed.

"SECT. 4. This act shall take effect from and after the date of the passage thereof."

Penniman did not take or offer to take the poor-debtor's oath, on the taking of which he would have been entitled to discharge from imprisonment, but, while he was still in jail under the commitment, applied to the Supreme Court of the State for his release by virtue of the provisions of the act just recited.

His discharge was opposed by Tweedle, the committing creditor, on the ground that the first section of the act, by virtue and force of which he claimed to be discharged from imprisonment, was repugnant to and in violation of sect. 10, art. 1, of the Constitution of the United States, and was, therefore, null and void, because it impaired the obligation of the judgment upon which the commitment had been made, and of the contract on which the judgment was founded.

It was adjudged by the Supreme Court that the section was constitutional and valid, and that by virtue thereof Penniman was entitled to be discharged from further custody under the commitment. He was discharged accordingly.

This judgment of the Supreme Court is brought here on error for review.

It is only necessary to consider that part of sect. 1 of the act above recited which relieves a party from imprisonment upon the execution. Penniman invokes that provision and no other. He was merely relieved from imprisonment, and it is that and that only of which Tweedle complains. Statutes that are constitutional in part only will be upheld, so far as they are not in conflict with the Constitution, provided the allowed and the prohibited parts are severable. *Packet Company* v. *Keokuk*, 95 U. S. 80. So that if so much of the section under con sideration as relieves a debtor from imprisonment for debt is

constitutional and can be severed from the other parts of the enactment, the judgment of the Supreme Court of Rhode Island should be affirmed.

That part of the section which relates to the imprisonment of the debtor, and that which relates to the seizure of his property, are entirely distinct and independent, and either one can stand and be operative, though the other should be declared void. We may, then, in deciding this case, consider sect. 1 as if it read: "No person shall hereafter be imprisoned, or be continued in prison, . . . upon an execution issued upon a judgment obtained against a corporation of which such person is or was a stockholder."

The only question, therefore, which we are called on to decide is whether this provision, enacted after the recovery of the judgment against the corporation, by virtue of which the defendant in error was imprisoned, is a law which impairs the obligation of contracts.

In other words, Can a State legislature pass a law abolishing imprisonment for debt on contracts made or judgments rendered when imprisonment of the debtor was one of the remedies to which his creditor was by law entitled to resort?

This court has repeatedly and pointedly answered this question in the affirmative, holding such an enactment not to impair the obligation of the contract.

In *Sturges* v. *Crowninshield* (4 Wheat. 122) this court, speaking by Mr. Chief Justice Marshall, said: " The distinction between the obligation of a contract and the remedy given by the legislature to enforce that obligation, has been taken at the bar and exists in the nature of things. Without impairing the obligation of the contract the remedy may certainly be modified, as the wisdom of the nation shall direct. Confinement of the debtor may be a punishment for not performing his contract, or may be allowed as a means of inducing him to perform it. But the State may refuse to inflict this punishment, or may withhold this means and leave the contract in full force. Imprisonment is no part of the contract, and simply to release the prisoner does not impair its obligation."

The precise question raised in this case came before this court in *Mason* v. *Haile*, 12 id. 570. The case was an action

of debt, brought in the Circuit Court of Rhode Island, upon two several bonds given by Haile to the plaintiff Mason and one Bates, whom the plaintiff survived; one of which was executed on the 14th and the other on the 29th of March, 1814..

The condition of both bonds was the same, and was as follows: —

"The condition of the above obligation is such that if the above-bounden Nathan Haile, now a prisoner in this State's jail in Providence, within the county of Providence, at the suit of Mason and Bates, do, and shall from henceforth continue to be, a true prisoner in the custody, guard, and safekeeping of Andrew Waterman, keeper of said prison, and in the custody, guard, and safekeeping of his deputy, officers, and servants, or some one of them, within the limits of said prison, until he shall be lawfully discharged, without committing any manner of escape or escapes during the time of restraint, then this obligation to be void, or else to remain in full force and virtue."

To the declaration upon these bonds the defendant pleaded, in substance, that in June, 1814, after giving the bonds, he presented a petition to the legislature of Rhode Island, praying for relief and the benefit of an act passed in June, 1756, entitled "An Act for the relief of insolvent debtors." That in February, 1816, the legislature, upon due hearing, granted the prayer of his petition and passed the following resolution: —

"On petition of Nathan Haile, of Foster, praying for the relief therein stated, that the benefit of an act passed in June, 1756, for the relief of insolvent debtors, may be extended to him. *Voted*, that the prayer of the petition be, and the same is, hereby granted."

That the defendant afterwards, in pursuance of said resolution and of the laws of the State, received, in due form, from the proper court, a judgment that "he should be, and was thereby, fully discharged from all the debts, duties, contracts, and demands, . . . and from all imprisonment, arrest, and restraint of his person therefor."

To this plea a demurrer was filed, and the judges of the Circuit Court being divided in opinion as to the sufficiency of

the plea, the question was certified to this court for final de-
cision.

The case was argued by Mr. Webster for the plaintiff. He
urged that the act of February, 1816, liberating the person of
defendant from imprisonment and reviving in his favor an
obsolete insolvent act of the colonial legislature passed in 1756,
and no longer in force, was in the strictest sense a law impair-
ing the obligation of contracts; that it interfered with an
actually vested right of the creditor acquired under existing
laws and entitling him to a particular remedy against the per-
son of his debtor; that upon the narrowest construction which
had ever been given to the prohibition in the Constitution of
the United States it impaired the obligation of the bonds;
that the obligation of these bonds was entirely destroyed by
the act, which was not a general law, but a private act pro-
fessedly intended for the relief of the party in the particular
case.

But this court held the plea good, and the resolution of the
legislature of Rhode Island by which the defendant was dis-
charged from imprisonment a valid and constitutional enact-
ment.

The court said: " Can it be doubted but the legislatures of
the States, so far as relates to their own process, have a right
to abolish imprisonment for debt altogether, and that such law
might extend to present as well as future imprisonment? We
are not aware that such a power in the States has ever been
questioned. And if such a general law would be valid under
the Constitution of the United States, where is the prohibition
to be found that denies to the State of Rhode Island the right
of applying the same remedy to individual cases. . . . Such
laws merely act on the remedy, and that in part only. They
do not take away the entire remedy, but only so far as imprison-
ment forms a part of such remedy. The doctrine of this court
in the case of *Sturges* v. *Crowninshield* (4 Wheat. 200) applies
with full force to the present case."

Mr. Justice Washington dissented from the opinion in the
case, but concurred in so much as related to the discharge of
the defendant from imprisonment. He remarked: " It was
stated in *Sturges* v. *Crowninshield* that imprisonment of the

debtor forms no part of the contract, and, consequently, that a law which discharges his person from imprisonment does not impair its obligation. This I admit, and the principle was strictly applicable to a contract for money. . . . I admit the rights of a State to put an end to imprisonment for debt altogether."

So in *Beers* v. *Haughton* (9 Pet. 329), this court said. " There is no doubt that the legislature of Ohio possessed full constitutional authority to pass laws whereby insolvent debtors should be released or protected from arrest or imprisonment of their persons on any action for any debt or demand due by them. The right to imprison constitutes no part of the contract, and the discharge of the person of the party from imprisonment does not impair the obligation of the contract, but leaves it in full force against his property and effects." p. 359. See also *Von Hoffman* v. *City of Quincy*, 4 Wall. 535, and *Tennessee* v. *Sneed*, 96 U. S. 69.

The general doctrine of this court on this subject may be thus stated : In modes of proceeding and forms to enforce the contract the legislature has the control, and may enlarge, limit, or alter them, provided it does not deny a remedy or so embarrass it with conditions or restrictions as seriously to impair the value of the right. *Bronson* v. *Kinzie*, 1 How. 311; *Von Hoffman* v. *City of Quincy*, *supra ; Tennessee* v. *Sneed*, *supra.*

The result of the decisions of this court above quoted is that the abolition of imprisonment for debt is not of itself such a change in the remedy as impairs the obligation of the contract.

*Judgment affirmed.*